# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0653
Filed January 28, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jose Antonio Torres Gomez,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Kristen Formanek, Judge.

---

## SENTENCE VACATED AND REMANDED FOR RESENTENCING

---

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Sandy, J.

1

**SANDY, Judge.**

Sentencing discretion is broad—but it is not boundless. When a district court rejects a negotiated plea agreement and imposes a substantially harsher sentence, Iowa law requires the district court do more than inaccurately checkmark inapplicable boxes. It requires an explanation grounded in the defendant, the offense, and the record. Because the district court failed to provide such reasoning here, we vacate the sentence and remand for resentencing.

## BACKGROUND FACTS AND PROCEDURE

On February 22, 2025, Jose Antonio Torres Gomez was engaged in a domestic dispute with his wife at their residence in Polk County. The argument occurred in the presence of two minor children. During the dispute, Torres Gomez made verbal threats suggesting that he would shoot his wife and the children, describing the act as "a party." In response, the wife and children retreated to a bedroom, secured the door, and contacted law enforcement. Officers subsequently arrived at the residence and arrested Torres Gomez.

As a result of the incident, the State filed an amended trial information charging Torres Gomez with four aggravated misdemeanor offenses: two counts of harassment in the first degree, in violation of Iowa Code section 708.7(2) (2025), and two counts of child endangerment, in violation of Iowa Code section 726.6(8). The charges were based on the same course of conduct, namely the verbal threats made during the domestic dispute.

On April 7, Torres Gomez submitted a written guilty plea to one count of harassment in the first degree (count I) and one count of child endangerment (count III). In the written plea, Torres Gomez admitted that

he threatened to commit a forcible felony by stating that he would kill the victims and that his conduct created a substantial risk of harm to a child's mental health by making the threats in the children's presence. The remaining counts were dismissed pursuant to the plea agreement.

The plea agreement contemplated suspended prison sentences, consecutive probationary terms, and waiver of fines, court costs, and fees. Torres Gomez acknowledged in the written plea that the district court was not bound by the sentencing recommendations contained in the agreement. He also waived the preparation of a presentence investigation report, the statutory time between plea and sentencing, his right to be present in court for the plea and sentencing proceedings, and reporting of those proceedings.

On the same date it accepted his plea, the district court entered a written sentencing order. The court imposed a term of incarceration not to exceed two years on each count and ordered the sentences to run consecutively, for a total period of incarceration not to exceed four years. Probation was denied. In the sentencing order, the court identified several factors as most significant in determining the sentence, including "[t]he nature and circumstances of the crime," "[p]rotection of the public from further offenses," the "[d]efendant's criminal history" and "propensity for further criminal acts," "[m]aximum opportunity for rehabilitation," and "[t]he plea agreement." The court further stated that the consecutive sentences were based on "the separate and serious nature of the offenses" and the need "to provide defendant maximum opportunity for rehabilitation."

Following entry of the sentencing order on April 7, Torres Gomez filed a timely notice of appeal. On appeal, he challenges the sentences imposed, arguing that the district court failed to adequately state its reasons for

imposing incarceration rather than probation and for ordering the sentences to run consecutively. The State responds that the district court satisfied its obligation to state reasons for the sentence imposed and properly exercised its sentencing discretion.

## STANDARD OF REVIEW

"[R]eview of a sentence imposed in a criminal case is for correction of errors at law." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). When a sentence is within the statutory limits, it is reviewed for an abuse of discretion. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). An abuse of discretion is found when "the district court exercises its discretion on grounds or for reasons that were clearly untenable or unreasonable." *Id.* (citation omitted).

## DISCUSSION

A sentencing court is required to state on the record its reason for selecting the particular sentence it imposes on a defendant. Iowa R. Crim. P. 2.23(2)(g). However, the reporting of a sentence may be waived, and the reasons for the sentence can be done in writing as part of the sentencing order. *State v. Thompson*, 856 N.W.2d 915, 920 (Iowa 2014). Such was done here. As recited above, the court rejected Torres Gomez's plea and sentenced him to a four-year prison sentence instead of probation as per the plea agreement. And while such plea was not binding on the sentencing court, we have stated that when a more serious sentence is imposed that a need for more extensive statement of reasons is—perhaps—more important. *State v. Harper*, No. 17-0813, 2018 WL 1433073, at *2 (Iowa Ct. App. Mar. 21, 2018).

Our supreme court has held that a "boilerplate" statement of reasons does not satisfy rule 2.23(2)(g) and that something more specific is required.

*State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001). For example, in *Lumadue*, the court utilized "a pre-printed 'Prison Order' which included the following statement: 'The Court has determined that this sentence will provide reasonable protection of the public. Probation is denied because it is unwarranted.'" *Id.* This "boilerplate" language did not met the requirements of the rule. In short, simply using an unindividualized one-size-fits-all form is improper. *See State v. Luke*, 4 N.W.3d 450, 457 (Iowa 2024).

In *State v. Thacker*, our supreme court again condemned a standardized sentencing order. 862 N.W.2d 402, 408–10 (Iowa 2015). There too, the written sentencing order was the only statement of reasons for the defendant's sentence. *See id.* at 404. The district court had checked a box on the order that said "The Plea Agreement" was "the most significant [factor] in determining [the] particular sentence." *Id.* The problem with this reasoning was that nothing in the record indicated that the parties' plea agreement included an agreement as to sentence. *Id.* at 410. The supreme court thus vacated the district court's sentence. *Id.* at 408–10.

In *State v. Thompson*, our supreme court held that a check-the-box form for the sentencing did not meet rule 2.23 standards unless specific boxes were actually marked. 856 N.W.2d 915, 921 (Iowa 2014). Again, the written order was the only record of the sentence. *Id.* at 917. Like here, the order listed fifteen options with checkboxes. *Id.* It was intended that the district court would mark the most relevant boxes. *See id.* Yet, the district court had failed to mark any of the options. *Id.* at 918. The supreme court held that under the circumstances, this did not amount to a valid statement of reasons. *See id.* at 921. But the court clarified that if the form was properly filled out, a check-the-box form would be an acceptable way to express the reasons for a sentence. *Id.*

So, was the check-the-box form here properly filled out? We think not. Six out of the fifteen available boxes were checked. Two of those six boxes— the plea agreement and criminal record—were not applicable and thus incorrect. The court checked "[t]he plea agreement" box even though it did not follow the plea agreement. The court gave no explanation for declining to follow the plea agreement and, with no reason apparent from the record, we are left to guess why it did so. *See Thacker*, 862 N.W.2d at 410 ("While terse reasoning can be adequate when we know the statement in the context of the record demonstrates what motivated the district court to enter a particular sentence, we cannot guess or simply calculate the rough probabilities." (citation omitted)).

The court additionally checked the "[d]efendant's criminal history" box despite the record being silent as to whether Torres Gomez has any criminal history. The written plea indicated that Torres Gomez was not currently on probation or parole. The written plea also includes a blank line to list "prior convictions for a sentencing enhancement," and no convictions are listed. The record does not show any propensity for further criminal acts. We are accordingly left to speculate about Torres Gomez's criminal history and what facet of that history motivated the court to impose a prison sentence. *See State v. Cooper*, 403 N.W.2d 800, 802 (Iowa Ct. App. 1987) ("[A]ppellate courts should not be forced to rely on *post hoc* attempts at divining the district court's motivation from the entirety of the record in order to determine if the district court abused its discretion."). The remaining checked boxes are "generalized, vague considerations which we may assume advise every court in making every sentencing decision." *Id*. Like in *Lumadue*, we are missing "a rationale relating to this offense, and this defendant's background." 622 N.W.2d at 305.

Under these circumstances, the amalgamation of valid and invalid reasons renders the entire sentence invalid. Our state's sentencing procedures are intended to "ensure[] defendants are well aware of the consequences of their criminal actions" and "afford[] our appellate courts the opportunity to review the discretion of the sentencing court." *Thompson*, 856 N.W.2d at 919. A sentencing court's failure to accurately complete the check-the-box portion of the sentencing form frustrates and circumvents these two purposes. For that reason, we vacate the district court's sentencing order and remand for resentencing.

**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**