# IN THE COURT OF APPEALS OF IOWA

No. 22-2109
Filed June 19, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JACHINA MONET HILL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


The defendant challenges the sufficiency of the evidence and her consecutive sentences following multiple convictions.  **AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


Considered by Bower, C.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

A jury found Jachina Hill guilty of possession of an imitation controlled substance with the intent to deliver (imitation alprazolam) with an added enhancement for immediate possession of or controlling a firearm (count I), failure to possess a drug tax stamp (count II), and possession of a controlled substance (marijuana) (count III).  The district court sentenced Hill to consecutive terms of incarceration for a total period not to exceed nine and one-half years.  On appeal, Hill challenges the sufficiency of the evidence supporting the finding she knowingly possessed the pills—a common element of counts I and II—and argues the court failed to provide adequate reasons on the record for the sentence imposed.

**I. Background Facts and Proceedings.**

On March 8, 2021, Des Moines police officers executed a search warrant on Hill's home.  During the search, they found a loaded handgun sitting on the entertainment center in the living room, which was just a few feet from a vase holding 362 pills.  The pills appeared to be alprazolam,[1] which is a schedule IV controlled substance.  *See* Iowa Code § 124.210(3)(a) (2021).  On the same entertainment center, officers found a digital scale and a work badge of Hill's.

Hill was interviewed by police at her home while the search was conducted.  She admitted she had marijuana in the home and that she smoked the drug; she also told officers about her handgun and permit to carry.  When asked if there were other illegal drugs in the home, Hill replied, "There shouldn't be.  I don't have any."[2]

---

[1] Alprazolam is generic Xanax.

[2] An audio recording of the interview was admitted into evidence at Hill's trial and played for the jury.

But she told officers that her adult sister and sister's boyfriend were living with her, several other people have a key to her home, and her door is usually unlocked. Hill was arrested and later charged with counts I, II, and III.

At trial, a police officer testified that, during an unrelated investigation, officers searched the phone of A.M. During that search, they found pages worth of messages sent between A.M. and Hill in October and November 2020. The messages seemed to show at least seven drug transactions; the messages typically involved A.M. making a vague request for a certain number ("how much for 5") with a response about price ("35"), but a few messages specifically referenced "xans" or "perks." When police showed Hill a picture of A.M., Hill initially denied knowing her. After Hill was told that officers had seen messages showing A.M. bought pills from her, Hill admitted that she had "done a couple pills with her. That's it, that's all." She denied selling A.M. pills but said they traded them sometimes. The officers executing the warrant found the bag of pills during the interview; after being confronted with that information, Hill denied the pills were hers or that she knew where they came from. But when asked if the bag would have her fingerprints on it, she said "it might." Later, when officers searched Hill's phone, they found messages between someone saved as "Serve" and Hill from March 5, 2021—three days prior to the execution of the search warrant. Serve asked Hill if she had any "white or yerk."[3] Hill replied that she did not have "yerks" but did have "xans," and Serve stated they wanted "five of the white xans." A criminalist from the Iowa Division of Criminal Investigation testified that she tested

---

[3] The officer testified that "Yerks are a common street term for Percocet," which is a "very strong pain medicine" that is a "schedule II narcotic."

the recovered pills; while the pills appeared to be alprazolam, testing showed they were "instrumentally consistent with bromazolam."[4]

Hill testified in her own defense, stating she had never seen the bag of pills recovered from her home and did not know how they got there. When asked if she denied sending any of the messages police recovered from A.M.'s phone that were exchanged between A.M. and Hill's phone number, Hill responded, "There's a possibility."

The jury found Hill guilty as charged of all three crimes; it also found Hill had a firearm in her immediate possession or control, making the firearm enhancement applicable to count I. The district court sentenced Hill to consecutive sentences for a total of nine and one-half years. Hill appeals.

## II. Discussion.

**A. Sufficiency of the Evidence.** Hill challenges the sufficiency of the evidence that she knowingly possessed the pills, which is a common element in both possession of an imitation controlled substance with intent to deliver and failure to possess a drug tax stamp.[5]

---

[4] Initially, the criminalist tested only one of the 362 pills. Later, at the request of the police, she tested an additional fifteen pills at random (three samples of five analyzed in each). All sixteen pills were instrumentally consistent with bromazolam. No one disputed this methodology or suggested that not all 362 pills were the same.

[5] To prove possession with intent to deliver, the State had to establish:

1. On or about March 8, 2021. [Hill] knowingly possessed Bromazolam.

2. The Bromazolam appeared to be or resembled Alprazolam, a schedule IV controlled substance due to its color, shape. size, markings or other aspects of packaging or other factors as explained in Instruction No. 14.

3. [Hill] possessed the Bromazolam with the intent to deliver it.

> [We] review[] challenges to the sufficiency of the evidence for the correction of legal error. Under this standard, [we are] highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence. Evidence is substantial when the quantum and quality of evidence is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." In conducting substantial-evidence review, [we] consider[] the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding."

*State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (internal citations omitted).

"Possession may be actual or constructive." *State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021). "A defendant can be in actual possession of a controlled substance when [it] is found on the defendant's person or 'when substantial evidence supports a finding it was on [the defendant's] person "at one time."'" *Id.* (second alteration in original) (quoting *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014)). "[C]onstructive possession requires the person to maintain control over the drugs or have the right to control the drugs." *State v. Kern*, 831 N.W.2d 149, 161 (Iowa 2013).

Here, the jury was instructed on both actual and constructive possession, and Hill did not challenge that instruction as inappropriate. *See State v.*

---

To prove failure to possess a drug tax stamp, the State had to establish:

1. On or about March 8, 2021, [Hill] knowingly possessed a taxable substance. to wit: Bromazolam (Imitation Alprazolam).

2. [Hill] possessed, in this State, ten or more dosage units of Bromazolam (Imitation Alprazolam).

3. The Bromazolam (Imitation Alprazolam), which [Hill] possessed, did not have permanently affixed to it a stamp, label or other official indication of payment of the state tax imposed on the substance.

*Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-the-evidence claims."); *see also Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 901–02 (Iowa 2017) ("If substantial evidence in the record supports a party's legal theory, it is entitled to submit that theory to the jury."). And the jury was not asked to specify under which theory of possession it found Hill guilty. But on appeal, Hill only challenges whether the State proved constructive possession.[6]

Because we are required to affirm if at least one alternative theory presented to the jury is supported by substantial evidence, *see* Iowa Code § 814.28, and because Hill's failure to challenge the actual-possession theory constitutes waiver of that issue, *see State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. Iowa 2001), we affirm her convictions under that theory without further analysis. *See State v. Triplett*, No. 19-1902, 2021 WL 3074475, at *1–2 (Iowa Ct. App. July 21, 2021) (recognizing that "[f]ailure to challenge one of the alternatives is tantamount to conceding substantial evidence supports that theory" and refusing to consider the ground actually challenged because "the effort would be futile"); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is

---

[6] In her appellate brief, Hill wrongly states: "Because the pills were not found on [her] person, the question is whether the State established she constructively possessed the pills." *See, e.g.*, *Jones*, 967 N.W.2d at 341 (pointing out the court of appeals was in error when it concluded that because a controlled substance was not found on the defendant's person, the case was necessarily one of constructive possession); *accord id.* ("[A] jury can find a defendant was in actual possession of a controlled substance even when the defendant was not 'caught red-handed and in physical possession at the time of the stop or arrest.'" (citation omitted)). Presumably due to this misstatement of law, Hill confines her challenge to the State's proof of constructive possession.

confined to those propositions relied upon by the appellant for reversal on appeal.").

     **B. Sentencing.** Hill challenges the sentences imposed, arguing the court failed to state adequate reasons on the record. *See* Iowa R. Crim. P. 2.23(3)(d) (2022) ("The court shall state on the record its reason for selecting the particular sentence."). Pointing to *State v. Lumadue*, she argues boilerplate language alone is not sufficient to satisfy the requirements of rule 2.23. *See* 622 N.W.2d 302, 304 (Iowa 2001); *accord id.* at 305 ("Missing was a rationale relating to *this* offense, and *this* defendant's background. . . . [D]efendants are not fungible commodities. They are entitled to be informed, preferably face-to-face, about the consequences of their criminal acts." (internal citations omitted)). Plus, when the court decides to impose consecutive sentences, it is required to give its reasons for doing so. *See State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016) ("Sentencing courts should also explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration.").

     Here, before pronouncing sentence, the court stated:

> The Court finds no legal cause has been shown as to why sentence should not now be pronounced. The Court has carefully considered the statements and recommendations of counsel for Plaintiff and counsel for Ms. Hill as well as Ms. Hill's statement to the Court, which the Court does find sincere.
>     The Court has also reviewed and considered the [presentence investigation report (PSI)] pursuant to agreement of the parties and afforded Ms. Hill and her counsel and counsel for the State the opportunity to examine the PSI and offer additions, deletions, and corrections, and they each offered one correction which were noted for the record.
>     In addition, Ms. Hill was given the opportunity to speak in mitigation of sentence, as I already indicated. So at this point all that

is left for the Court to do now is to enter the sentence, and I will do that.

The court then sentenced Hill to a period of incarceration not to exceed four years on count I, five years on count II, and 180 days on count III and ordered Hill to serve all three sentences consecutively for a total period not to exceed nine and one-half years. The court ordered consecutive sentences "based upon the separate and serious nature of the offenses." After pronouncing the sentence, the court stated:

> Probation is denied based upon sentencing considerations set out herein, and those are as follows: The Court determines this sentence will provide maximum opportunity for Defendant's rehabilitation and protection of the community from further offenses.
> Pursuant to Iowa Code section 907.5, the Court has considered the following factors: Defendant's age; Defendant's prior record of convictions and deferments of judgment, if any; Defendant's employment circumstances; Defendant's family circumstances; Defendant's mental health and substance abuse history and treatment options available in the community and within the correctional system; the nature of the offenses committed; statutory sentencing requirements; and other factors as follows: The PSI without the assessment tools.

The court's written sentencing order checked all but one of the possible options ("the plea agreement") and matched those orally listed by the court. No additional reasons were provided in the written order.

While we recognize the prohibition on boilerplate language alone as stated in *Lumadue*, in more recent cases, our supreme court has approved of the use sentencing order forms, allowing the district court to "check boxes indicating the reasons why a judge is imposing a certain sentence" to meet its rule 2.23(3)(d) obligation. *State v. Thompson*, 856 N.W.2d 915, 921 (Iowa 2014). And while it is not without its detractors, *see State v. Luke*, 4 N.W.3d 450, 461 (Iowa 2024)

(McDermott, J., dissenting) ("[T]o state every reason is to state no reason. When the sentencing court provides a list that recites every reason for a criminal sentence—a list that could apply to every defendant for every crime in every case—the court has provided no explanation for the sentence imposed in *this* case against *this* defendant."), the court's action of choosing the relevant factors—all but "the plea agreement," here—from the list of statutory criteria is sufficient for rule 2.23(3)(d). *Cf. Luke*, 4 N.W.3d at 457 (noting the boilerplate language of *Lumadue* that was found inadequate came from a "pre-printed," "one-size-fits-all form" where there was no personalization or selection of criteria); *Thompson*, 856 N.W.2d at 921 (providing that, when properly filled out, a check-the-box form is an acceptable way to express the court's reasons for a particular sentence imposed). Additionally, the court's explanation that it was imposing consecutive sentences "based upon the separate and serious nature of the offenses" is also adequate. *See State v. Wilson*, 5 N.W.3d 628, 634 (Iowa 2024) (recognizing the court's stated reason for imposing consecutive sentences can be "terse and succinct" as long as it "does not prevent appellate review of the" court's exercise of discretion).

For these reasons, we affirm Hill's sentences.

## III. Conclusion.

We affirm Hill's convictions and sentences.

**AFFIRMED.**